seated please the next case actually it's three cases combined it's the lead case the United States versus Ali and I guess we're going to hear first from you mr. McCarthy yes I'm Joe McCarthy for mr. Abdi Rahman Jabril one of many defendants in this consolidated case I'll limit my comments to count one briefly and then I'll surrender the podium to my colleagues who will address other issues as the court will recall count one the defendants are all charged with a conspiracy to can you just pull that mic up a little bit yeah I'm sorry they're all charged with this conspiracy to possess with intent to distribute cot as a court will recall cathinone is the active ingredient within cot is it cot or cat we debate that with among ourselves what are the Somalis say my and the conspiracy is to distribute cathinone there they've all used cot as the court will recall and they were open and notoriously about it the evidence showed that each of these defendants in one way or another either was importing selling buying or even chewing cot the court instructed the jury that to find the defendants guilty on count one with this conspiracy they were required to find that the defendants knew that cot actually contained this active ingredient the scheduled one controlled substance cathinone or another control substance now the government whether the court agrees with our position that the jury actually had to define that the defendants knew that cot contained cathinone or whether the jury was only required to find that they were aware that cot contained some control substance the evidence in this case failed to meet that burden for the government the government could prove that either by direct or circumstantial evidence there was no direct evidence I anybody was shown to know that cot contained this schedule one can control substance cathinone it was significant circumstantial evidence however that the government advanced to to show beyond a reasonable doubt that the defendants knew that there was a controlled substance within cot as it related on all our cases suggest that's enough indeed now because it's a conspiracy we advance the argument for the court's consideration that they were required to find that they knew cathinone was in cot rather than a controlled substance but I think the point for purposes of this morning is it really doesn't matter because whether they they had the universe of controlled substances or cathinone itself there was insufficient evidence to satisfy that element in the case as it related to my client mr. Jabril the government advanced certain pieces of circumstantial evidence from which they argued that he must have known it's illustrative for the other defendants as well but on behalf of mr. Jabril the government made arguments such as he bought two to four pieces of cot at a time from mr. Ishak who was the the leader in this conspiracy that he discounted the price to my client and that my client who was working at a money transaction business called to Hobbs Hill would help the leader of this conspiracy by sending the money to the Middle East for him the point is u.s. versus Casio second circuit case made the observation that these kinds of facts do not lead inexorably to the conclusion that the defendant therefore knows that cot contains a controlled substance Casio makes a good point that what was was the drill or one of the ones was he part of a telephone conversation with Ishak where they talked about how to avoid detection by the police travel alone don't somebody else because then you'll have mixed different stories I don't believe I don't believe it was my client okay what was to build there was some telephone conversation there were frankly there were telephone conversations between all the defendants and mr. Ishak and there were wiretaps that that captured all the all these individuals speaking and they were all openly and notoriously talking about cot during these conversations and in some conversations mr. Ishak did talk about traveling as he would come down the interstate and when the police would stop him and that's true I'm out of my time already but the point is simply if the court would indulge me for a minute the dilemma I think the government has is the way cot is handled versus marijuana virtually every controlled substance is a distilled product cocaine comes from coca leaves heroin comes from opium marijuana and cot are real exceptions in that they are the mediums through which the active ingredient is delivered in marijuana's case THC is delivered but to the user in Cots case is cathinone the way the statute though handles marijuana in contrast with cot is informative the prosecution in a marijuana case need only prove that the defendant possessed or knew he was trafficking in marijuana because marijuana itself is in the statute as a prohibited entity or item Cots different Cots not a prohibited material the way marijuana is a prohibited material and that's the dilemma that the government has in this case we can all possess cot as long as it doesn't contain those active ingredients and unlike marijuana where the government can simply get away with and rest its case on showing that the defendant asked to buy marijuana the government can't do that it's a language the statute substance or mixture that contains cathadone but the schedule one control substance yes but there is that statute for marijuana and we were wrestling with how this is different from virtually every other case in the product marijuana is not the distilled product but marijuana is dealt with in Cots not can cot exist without the active ingredient yes what the what the record we show the court is when it's picked freshly it contains cathadone a schedule one control substance as it degrades and becomes stale that cathadone converts and the government endorses this as well that cathadone converts to a schedule for controlled substance cathadone or I'm sorry caffeine cathadone to caffeine thank you so it goes from which would not be schedule one it's not schedule one control substance and I don't know the answer to how long the caffeine will stay in the dried-out cot before that also degrades very important to get it fresh well and and that's certainly something the government emphasized all during the trial the participants talked about it too and in the other shock was very proud of how fresh his stuff was he all like fresh coffee too though which I understand I understand and coffee gives you a high to thank you mr. McCarthy next I guess is mr. Walsh morning your honor Thomas Walsh may please the court I represent clade ESA and I along with other councils like to dress the fennel pro panel of mine or PPA free easiest way to say it and that also gives you a high like caffeine or cathinone and also the PPA but the PPA is not a control I understood from the record though that the PPA did not degrade that it it's a force of giving a high was constant whereas cathinone would degrade over time so that when the conspirators talked about the importance of having caught fresh they were had to be addressing the cathinone aspect not the PPA and and maybe you were able to determine that based on my leading questions because I wasn't allowed my counsel were not allowed to have an expert the court used its discretion in the question is is it relevant if it's if that's true well I think as I look through the transcript and listen to the testimony not one person ever mentioned cathinone these gentlemen did not know what cathinone is they knew that they chewed this legally in their country and then when they got here they chewed it although it wasn't allowed to come in for immigration for agricultural reasons as we heard but they would get a buzz off it and PPA is one it's a stimulant it is a substance that is not controlled and that could give you the same high the government well the court abused its discretion by denying us the ability to have this expert testify to that well wouldn't that make everything pretty confusing I think it would go right to the essence of the of the issue except that the evidence undisputed evidence I think was that cathinone degrade into caffeine I agree with the quinn that the high from cathinone is is lost when the cot gets stale or older whereas PPA doesn't so they're clearly focusing their distribution efforts into preserving the cathinone the high from the cathinone because it's present when the when the cot is fresh well I agree with the court but for we don't know what high PPA does we don't know the PPI PPA may be a even stronger high than it's not a question what's a strong high and coffee gives you a high too it's a question of whether it's a different characteristic that would confuse the symptoms of caffeine I don't I don't agree with the court because the government couldn't say can let me ask you does the records provide evidence that the PPA does not degrade it is constant high the same level I don't know if the record addresses either of that I was unable to present that there's no evidence in the record you say about that I don't believe I thought that was the basis for the court's ruling no the court's ruling was that it wasn't relevant I don't know why it's not relevant I can't see it's not what it was because of what I just mentioned to you right that it doesn't degrade and I don't believe any there was any testimony that it didn't degrade only I think the court was realized that what degraded was cathinone I don't think there was evidence that PPA never degraded what happened was is that the government had an expert witness lined up they began to present the case and the only way they could get say enter was through establishing that the cop was fresh that it was there's a preservation factor that it was shipped in that there was a question called Giza however what what happened was is as we came to the eve of trial even though there were discovery motion seven days and three days before trial the long behold the PPA was off the lab of the lab report we gave notice that the government five days out which is I would submit was good cause concerning an expert that we had because as we started to thank your lights all right I'll end that yeah thank you please the court William Cummings I represent Najee out of Shmuley mr. Alish Molly appeals from the denial of his rule 29 motions for insufficiency of evidence miss Alice Molly like many of these people were primarily users there were some distribution but these were not street dealers in the sense of distribution they were using the cop because they enjoyed using it and they found the source of supply through mr. Ishak the government has a burden of proving that my client and all the others had the requisite knowledge so I enter in order to make this this this scheme of outlawing cathedral but not it viable and they tried to do that with regard to my client through inferences there was no direct evidence that he had any knowledge of the fact that cut contain a controlled substance likewise there was no direct evidence that he knew it was illegal of course we know that can be illegal for reasons other than that it contains a controlled substance the government suggests four primary points that they think that the jury could use to infer this knowledge one were the many telephone calls several telephone calls he had with mr. Ishak the leader of the conspiracy in the 11 calls that they so-called cherry pick to use there are many more beside that the ones they introduced into evidence there's never any conversation that suggests that mr. Ishak is our smallie first of all mr. Ishak testified that although he learned in 2005 that cot was illegal the importation of cot was illegal he did not learn that it contained a controlled substance until the spring of 2011 when he was arrested in this case and put in jail that's the first time he knew it contained a controlled substance and the other thing that they suggest is that somehow because mr. Ishak mr. Ismaili had a brother who also ran a store and was a customer mr. Ishak that somehow if that brother had knowledge that that Catherine Catherine or that cot contain a controlled substance somehow the jury can infer that he would have communicate that to my client again no evidence no palpable no tangible evidence no phone calls nothing to support that kind of inferences which are not sufficient then they suggest that because my client asked to have mr. Ishak send some cot to his friends in Alabama that somehow there's a problem there at one point the judge was told by the government that mr. Ishak knew or testified that some of those shipments were seized we point out that there was no such testimony whatsoever from mr. Ishak about that in fact mr. Ishak when he was telling mr. Hersey his friend his supplier in England to ship some to Alabama he told him don't worry there won't be any sees there are no foreigners down there living in Alabama in other words no reason why packages coming from England would be suspicious I suppose that's mr. Ishak talking no indication that mr. Ishak ever shared any of this information about the packages and how they arrived or didn't arrive with mr. Alish Molly there's no phone calls and the important thing is that the government wants to suggest the jury can infer this communication between the two but mr. Ishak was their witness he was on the stand for three days if he had had any such communication about these points with mr. Alish Molly all I had to do was ask him and they never did and then they come to the end of the case and says you the jury can infer and the judge allowed that that was our point at the rule 29 how can you allow that when they had their witness understand he could have said I told about that I described my experience with it it's the illegality and I and he never asked a question and then the last thing they have is to suggest that my client somehow would have discerned this point of illegal illegality or control substance somehow because the packages some packages were mislabeled the government introduced nine packages into evidence out of 1,500 of packages we derived that by the gross amount that their agent said that the top was nine and and their first witness mr. Garn postal inspector says well shippers frequently mislabeled not always so we don't have any basis for which the jury could could discern that the packages that mr. Alish Molly received to at his store one or two and one of the UPS store which the government never introduced somehow were mislabeled or that mr. Alish Molly again somehow should have discerned if they were again they have to infer that they were that they somehow he would have gleaned some some from that that this was improper or illegal but the important thing was controlled substance was illegality by itself under the case here case which is Sixth Circuit case that's that's not enough because a product particularly an agricultural product can be illegal to bring in the United States for all sorts of reasons either for health reasons or for contamination reasons or any number of reasons so the fact that it's illegal to import has nothing to do with whether or not it contains a controlled substance I've realized that my time is is getting close to the end but there are just no evidence whatsoever no substance of facts from which a jury could infer that mr. Alish Molly had the knowledge what page were the telephone calls on what part of the appendix do you happen to know that offhand well they're in the government exhibit 30 series you don't know what references in I can tell you like in the 4400 pages 400 okay thank you it was the four five four seven and four eight when he when he tells mr. Hersey to send five packages five pieces to Alabama and his testimony he said that his first shipment to no way is that's an assessment his actual communication to mr. Hersey is send five pieces that's four five four seven and a few days later he calls him back and says did you send them how many just sent and he says basically I haven't sent them yet and so Ishaq tells it will send them tomorrow and that's what he tells them don't worry about there there are no foreigners that live down there but no communication either in the telephone conversation with mr. Alish Molly or a question by the government to the witness was there ever any communication about between mr. Alish Molly and mr. Ishaq thereafter after mr. Alish Molly says would you send some got to my friends with regard to the Alabama shipments whatsoever thank you thank you mr. Cummings mr. good morning may it please the court Michael Frank on behalf of the United States I'll first address mr. Alish Molly since he was the most recent person discussed here there was more than sufficient evidence to show that mr. Alish Molly had the requisite knowledge here or frankly deliberate indifference with respect to whether the cot contained cathinone controlled substance so for example there was evidence that mr. Alish Molly had his stores and possibly his house at least two packages the evidence showed that the packages that were seized were all mislabeled each one of them had been labeled as children's toys picture frames clothes certainly not caught the jury also heard from approximately 10 US Customs and Border Protection inspectors who work at the JFK mail facility where all of the mail coming in from Europe first arrives that if somebody had labeled a package caught it would have been seized in fact they go to some measures to try to intercept caught they're not 100% successful but they do x-ray packages etc and try to disrupt caught so mr. Alish Molly had received at least two packages he then asks mr. Ishaq to send some packages down to friends in Alabama he is at some point from the telephone calls you can determine that he was down in Alabama also and that some of these packages were intercepted or they never made it to Alabama I should say the defense argues you can't the jury couldn't infer that Customs and Border Protection intercepted these but it was certainly mr. Ishaq's view that they had been intercepted that became a bad address and he just stopped sending caught there because it wasn't worth it he had to pay the shippers for the cot but it wasn't getting through the jury certainly could have inferred from all of that that mr. Alish Molly could figure out that there is something nefarious something illegal going on here there was also the fact that he was a caught user every single one of the defendants was a caught user there were various telephone calls where various defendants talk about getting high on caught predicting whether the cot will be very fresh and how high they'll get that night mr. Cummings pointed out also that mr. Alish Molly is the brother of mr. Albuquerque another one of the area Queens in Brooklyn I should say mr. Ishaq used to stay with mr. Albuquerque when he'd come up there to get the cot they would chew cot together they were very close mr. Albuquerque well the knowledge of kethamine it shows that they know that it's a substance that induces a high and that itself would give them some sense that this might be something that is unlawful well you agree that you can get high on something that's not a you can you certainly can or one of the other schedules for that matter to it I would say it's not extremely common I certainly think it would put somebody give somebody some indicia to think that hey there might be something if areas about this the other thing not a strict liability no it's certainly not your honor did you have so the circumstantial evidence is that clearly you can infer that they knew was something that may be prohibited that is one inference that could be drawn and in light of all the other evidence now don't you have to skip to another inference then that that that substance is in what's prohibited that's inference on top of inference isn't it well no you don't have to if they're getting high after chewing cot mm-hmm they have knowledge that something in cot gets them high so I don't think they have to draw any inference there the that far they then would have to suspect or draw an inference that there might be something in that cot that is making them high that is unlawful and if all we had were the fact that these defendants were cot chewers I suspect that would not be sufficient to meet the burden but there was a lot of other evidence with respect to other circumstantial evidence for example the fact that the packages were mislabeled the fact that they use various addresses to receive these packages so for example mr. Albuquerque mr. Alish from Molly's brother and mr. Ishak were on the telephone Ishak's telling him hey I need other addresses to send these mr. Ishak explained at a certain point he didn't keep using the same addresses at least not during a short period of time because he didn't want to draw attention to what he was doing he didn't want one of the people from for example a UPS store turning him into the police he didn't want customs getting a fix on one of the addresses and in fact that's one of the ways this case came about was a Homeland Security agent saw that packages kept going to one address in Virginia and did a controlled delivery to that address and that's how they discovered who mr. Ishak was before that they had no idea who he was or his involvement in this so mr. Ishak was correct that you know it was a wise thing to use different addresses and certainly the defendants such as Naji Alish Molly mr. Albuquerque and others helped him to do that there was also the fact that when mr. Ishak would deal with them he didn't deal with them they all own stores up there he didn't come in and bring his coca-cola truck like coca-cola does or General Mills or any of the other corporations I'm sure sell legitimate products he would distribute caught out of the trunk of his car out of garbage bags and made certain efforts to make sure nobody would see this so again another ability for the defendants to see hey there might be something amiss about this the all of the defense attorneys also conceded that cot is a way of life a culture in Yemen and Somalia where all of the defendants came from just two months ago the Seventh Circuit issued my re decision which is a cot case and we didn't cite it of course because our briefs were due before then but in there judge Bauer writing for the panel notes a study that said 75% of Somali men consume cot it also stood to reason and the jury certainly couldn't furthest that if cot is such an important part of your culture and you're going to make money from it being a cot dealer that you'll learn about whether it contains unlawful substances or is unlawful in the United States the jury also heard that a number of the defendants were longtime residents of the United States so for example mr. Aba Correa had been here for 30 years I think Collette is had been here 28 or 29 years so again they might have a better shot at ignorance if they had just arrived here a few months before they were arrested but that that was certainly not the case with respect to the defendants the jury also heard about the price differential mr. Garn postal inspector who has dealt with a number of cot cases testified as an expert he testified that where cot is legal for example previously in the United Kingdom it was legal you could get a bundle of cot for two to three dollars and there were some talk about this in the calls to about how cheap it is to get caught elsewhere in the United States on contrast degraded cot you can get for perhaps $40 a bundle a high-end Giza which contains a lot of that cost 90 sometimes over $100 so from this also the defendant certainly could figure out hmm why is it so expensive here in the United States you can factor in even transportation costs there's no reason why it should be that high other than the fact that it's an unlawful substance and that it's not readily available except through unlawful means there was also a number of suspicious incidents that happened there was discussions with mr. Albuquerque for example on the phone where he told Ishak I was going to pick up one of the packages of cotton New Jersey and I was stopped by the police and I told the police that I was there just to visit a friend again if there's nothing nefarious about cot why not just tell the police I'm here to get a shipment of cot how long has this been a restricted substance I believe since the I knew they delegated the Congress did did that they delegated the responsibility as to how to schedule them to the DEA exactly and why can Congress just make it since this is an agricultural product just deal with it like marijuana the plant itself illegal and and judge Bauer made that exact point for the Seventh Circuit and he I saw that he indicated others have said that also I don't presume to we can't write a better law so we have but we have to adjudicate the law we have so the question is it becomes more problematic for you in these these criminal prosecutions you agree right absolutely your honor it'd be much easier for us if they just because everything you've said basically is this clear evidence that they knew it was prohibited they knew that it made them feel good and they they knew that the quicker they got their product and somehow the better it made them feel but none of that really goes to knowledge of what the active chemical ingredient was well I didn't I didn't finish with all that I mean I was just going to start it's right that's what answer my question as you finish I'm not sure I understand your question there were other there was other their evidence so for example an elderly Somali woman stated that testified that so water Wally another one of the defendants specifically told her that cot was illegal in the United States so that indicates to me that they certainly knew something about cot was illegal another one of the defendants to import pineapples into Hawaii you can't bring pineapples into Hawaii it's illegal but they don't want to destroy their there that's their bread and butter plant right but it doesn't mean there's something in the pineapple that's an active ingredient schedule one no and I'll be just as secret about my pineapples going into Hawaii to a I'm pushing pineapples in Hawaii be careful right you do the same thing that's secretiveness price differentials the more the risk involved the more the price goes up that doesn't mean that the ingredient is there means this risk and price well I think market driven things not not substance well I think I think you take precaution in relation to the risk you are facing and so for example you might take some precautions if you're going to import pineapples to Hawaii but I don't know that you're going to go to the great efforts that these defendants did because what happens if you import pineapples to Hawaii in your luggage they seize them tended to conceal it I'm sorry if you intended to conceal your import of pineapples that would be evidence to suggest you knew it was illegal correct your honor but he legality doesn't get you there that's necessarily does it well I mean you I think you're correct that there are example you know is illegal to bring in tobacco product let's say in Somalia the tobacco there was real strong is really good but you can't import it without the paying the tax and duty and but you would still but that doesn't mean that something in that tobacco is he has an ingredient it's not illegality yes that is illegal terms of importation but it was more than illegality I think just nearby asked a question it's the content knowledge not correct no as this court and every other court that has addressed the issue has stated the government simply had to show that they knew there was some controlled substance in the cot that's what I just said maybe I'm missing something not not just that it's illegal to import the substance but that it has knowledge that something is something caffeine is in it correct that that's what the court instructed and we argue correctly constructed instructed the jury on this and you know your argument you know that you have to know this no I think they just need to know it's illegal correct and every board controls at that isn't controlled means correct that it's illegal to possess a deal with it imported so correct and every Court of Appeals that has addressed this issue including my ray the Seventh Circuit personally unanimous correct your honor it is unanimous I'm not aware of any Court of Appeals holding otherwise but Judge Gregory the defendants made that exact argument to the jury and the jury I submit could have inferred that if they had so chosen to they heard all of the evidence and taking the evidence in the light most favorable to the verdict I think that is sufficient evidence here to support some evidence in the record that one of the conspirators knew it contained an illegal substance so if it's a conspiracy why can't that be imputed to every member of the I think that's a point we made and perhaps not the best in our briefs but mr. Ishak certainly knew that swado Ali certainly knew that Ishmael Abdi another one of the co-conspirators admitted to federal agents he knew it was unlawful another co-conspirator Ahmed Hassan was interviewed by agents he made false exculpatory statements saying he didn't know anything about caught didn't know anything about Ishaq then changed those stories and admitted yeah I guess I I did get some caught from him every once in a while so yes there was certainly evidence that some of the co-conspirators had actual knowledge abakur gray for example had been convicted in Connecticut of cathinone distribution so again indicating that he certainly knew that cathinone was an unlawful substance and there was certainly plenty of evidence that the co-conspirators were constantly talking to each other mr. Ishaq excuse me so testified that he would talk on a almost a daily basis with be almost a fiction I heard the defense attorney saying well you know none of the calls does mr. Ishaq specifically tell them it's a schedule one controlled substance or that it's unlawful of course he didn't because they already knew that because there are men from Somalia and Yemen who like to consume caught like to sell caught and therefore they would learn about their nationality almost made them elite made them guilty didn't know not at all your no certainly compared to for example someone from Canada or Mexico where cot is not cot use is not particularly prevalent they would be more likely to know about it than others if what the Seventh Circuit said in their decision that 75% of Somali men use cot they'd be more likely to know about it than somebody who had never heard of cot and I think you know excuse me a large number of groups probably have never heard of cot it appears to be a dangerous slope we go into there to make that kind of leap in terms of what you're supposed to be your knowledge based on where you live you could make that argument the further extension well based on your demographics and where you come from in neighborhoods that you live in you ought to know a whole lot more about that somebody come from the suburban area good well it's a dangerous thing judge Bauer writing for the Seventh Circuit indicated and I think the opening line saying you know we were indicated they were somewhat unfamiliar with cot I think it's their decision where they have some discussion about how it's pronounced and there is some question as to how it's pronounced I've heard it pronounced as cot I've heard it pronounced cat shot any number of ways so I think people who have some familiarity with cot who come from groups who are more likely to have familiarity with it would certainly be able to answer more questions about it than other people who are unfamiliar with it so for example you go to some biker groups that are certainly much more likely to know about methamphetamine than some other drugs there's no doubt that certain drugs are more prevalent in certain cultures I think various courts have mentioned that so I don't mean any insult to people from Somalia or Yemen I'm merely restating what the Seventh Circuit said in their opinion so I believe that there was more than again taking the evidence of light most favorable to the verdict that the government had through the mens rea requirement with respect to the PPA the government gave with a PPA expert the government gave notice with respect to the experts it was going to call approximately seven months before trial and that's partially because the trial date had moved three weeks into trial that's when the defense attorneys said that they wanted to call this expert and Judge Ellis did not abuse his discretion in saying that the one that it was irrelevant and two that he would not find good cause with respect to permitting this expert to testify there would have been prejudice to the government we had already called off our pharmacological expert we had given notice about a pharmacological expert but by March 29th I think at the last status conference we had told defense counsel that we didn't intend to call him in our case-in-chief only possibly in rebuttal and it would have caused prejudice the government to try to get him to even see if he knew about PPA and furthermore we also made a harmless error argument with respect to that and if you look at page 48 of the government's brief in the swat awali case we cite one of the we quote one of the defense attorneys closing an argument where he specifically says PPA is not illegal it is not caught it is not illegal it's a stimulant they were able to get out from one of the chemists that the government had testified that it was a stimulant and you know they were certainly able to argue that their clients were seeking caught for the PPA and not for the cathinone etc I see that I have less than two minutes left if the court does not have any questions for me I would see all right thanks thank you all right we'll hear from mr. McCarthy again I guess same order you made the observation that even if they didn't think it was cathinone if they thought it it was illegal that would be enough controlled substance okay because the government relies on these furtive Jeff's gestures to extrapolate from that knowledge about a violation of 21 us code 841 and your honor as you pointed out pineapples is a good example Cuban cigars fruit coming in they'd be convicted well they would which is somebody and it's illegal to import pineapples I don't know if it is but if it is illegal to import pineapples and somebody's concealing it and you see palpable acts of concealment correct you that you could prove scienter that that guy knew it was illegal to import pineapple exactly here it's illegal to possess a cell and a cot or a cathinone and if these guys act in a way that's concealing it and hiding it and and that evidence is that they know it is a controlled substance it's illegal well and I think that's what the logic breaks down that is simply because they know something's wrong not something wrong is illegal well simply because they know something's illegal but there that cot is illegal simply that they know cot is what I'd suggest to the court is that doesn't take you as judge Gregory you pointed out that doesn't take you across the chasm to know that cot is illegal because it violates section 841 you don't need to know that none of the cases hold that all you need to know is that it's a controlled substance well that is a one means legal well that's what I mean it's another way of stating they know it's a controlled substance 841 violation as opposed to violating as casseur us versus casseur points out these facts could equally support a good argument is in other words their conduct may be consistent with something else but the government is putting together a series of facts of hiding this distribution importation and distribution and disguising it avoiding police several several of the people know explicitly it's illegal someone was convicted of it and so the question is you have a few of the conspirators here where the evidence is quite circumstantial but we have to examine those to see whether there was enough for the jury to conclude that as a member of the conspiracy they're imputed with the illegality I'd only want to leave the court with the thought that simply because there is perhaps a firm conviction in the mind of a defendant that there's something wrong about my use of cut either because my fellow Somali something wrong something illegal even and even illegal the government has to prove that the evidence shows beyond any reasonable doubt that not only did they know it was illegal but they knew it violated this drug statute and the simple point is I guess it says that well these people are not imputed as being lawyers illegality means that it violates a statute and whether it violates this statute section 1 section 2 section 3 they're imputed with illegality with center with the factors to control sub if they had no idea that cot contained to control substance but they knew it violated the customs law the court wouldn't conclude that these convictions and they were charged with violating the act it in a manner which they indicated that they knew that illegality but I think the evidence in this case you have a pretty tight-knit group here talking regularly hundreds of times with each other explicitly a majority of them know it's illegal and implicitly the others are being told about how to avoid being caught how to label things how to talk to police how to travel I don't want to leave each one does have to be looked at individually in the case and people like Alish Mali and Salhan and Sumitra real and you Braille I mean some of these people the evidence is much thinner than with respect to others it's not no question I think we will carefully look at each one we know your argument we Mr. Frank's comment concerning citing to the brief about counsel is able to argue the stimulant in the of PPA that is argument and the court instructs a jury that that's not evidence which goes right back to the expert that should have been allowed and there's a beauteous abuse of discretion by the court that the PPA is in cot it is a stimulant cot maybe maybe is that in the record it's in an argument I believe it is in record I thought you should have said that argument was stricken it's it was in argument in closing but I believe on a leading question by myself before the government and counsel objected that this person's not a farmer's a pharmacist or sustained I believe I got the answer at one time and then it was sustained after that well it seems to me either have it one way or the other and so what I'm going to say to the court is this is we know that the customs people said that cot is not legal to come in because it is an agricultural issue but PPA is gives you a high and the government wanted to show that chewing cot because they chew cot inference may be something prohibited because they chewed it got high yeah from PPA and that goes right to the essence of this the case government has a burden the defendants are presumed innocent they have a right to put on defense and that was the expert the government says they gave us expert notice months beforehand they did the mat the magically these lap sheets were changed so you're buying days a conspirator who had been previously convicted of cot is has no see enter because he thought it was PPA he knew he got high he wasn't sure you got convicted he knew he had been convicted of possessing cat I'd he was in Connecticut that's correct and so the question is does is he entitled to say I thought it was caught I mean PPA I don't know if he has to say it's PPA because burns on him but I think the government has to show that he knew it was a controlled substance he may have been convicted because it was an agricultural issue I don't know I don't know the issue he knows he knows but they acknowledge he was convicted for cop but correct and they have to prove it could have been because he had something that shouldn't have come across coming to the United States and they didn't prove that on mr. gear I believe it is however the the PPA I have to address this because the government says we had seven months notice but what happens is also in the lab cheats sheets change five days before before trial and three days before trial and the PPA is gone it's dropped down below and then so we gave notice the government called told the court on the 27th of November 27th of March or 29th of March that they had an expert that was going to be could be used for rebuttal it was the expert they designated there's a pharmacologist or and they could testify to that we gave notice in the third week of trial the same time they call it look at their brief and I don't have the page they called that gentleman off the third week he could have easily come in and rebutted the government held out that he was a rebuttal witness it was a good cause and the probative value exceeds the president's the government the government had a witness lined up gave notice gave discussed it and had it on call easily could have brought in there so our experts should have testified it was abused his discretion by the district court and asked the court to reverse that okay thank you mr. Walsh mr. Cummings you got one more minute and the others did on rebuttal three minutes on rebuttal they got two first of all your honor mr. Frank suggested that there might have been some cot delivered to mr. Alish my home there was never any cot delivered to his house one or possibly to deliver to a store and one he picked up with the UPS station the issue here is is I can't assume that these packages were mislabeled the government says many of more most of them were but mr. Garne says they are frequently mislabeled so I think we have to go with that evidence that these are not always guaranteed the point is that there's no information that mr. Alish Molly saw or took notice of the fact that what he picked up had a different label on him and there's never any discussion between him and mr. Ishak about how they're being concealed or if they are being considered the contents being concealed there's no such discussion mr. Alish Molly bear in mind is it is on the end receiver he's a guy receiving it for his own consumption and the suggestion that that didn't he do some redistribution or resale among he could make some money yet among his friends the colleagues the co-defendants that were from the Brooklyn area they did share sometimes it would come to mr. Alish Molly and he would pass it on sometimes they would buy from him what he had that's right he was a dealer I don't dispute that he was a dealer in that scenario what I'm trying to distinguish it from is a street deal or someone who's trying to make money out of it as a business this there was some of that going on no question about it but in terms of the of the imputing knowledge that people from mr. Ishak's group his overall group he had a group in the Washington DC Virginia area in a group over in Ohio and he had the group in Brooklyn those are three separate and distinct groups all linked together by mr. Ishak no question about it but in order to get information about what mr. Ishak may have told to the people in Ohio they never talked to the people in New York or the people in New York never talked to the people in the Washington DC area never they didn't know each other hadn't had no connection whatsoever the four in New York were Yemen's and they didn't have any relationship with it with the Somalis that were in Washington or in Ohio so the only only was mr. Ishak Yemeni or Somali Somali Somali what they shared was was the cultural heritage with regard to cut the how they break down this issue of about illegality versus controlled substance because if I can quote from it it says all actual page 24 of our opening brief all actual knowledge that a substance is controlled might in some cases be inferred from the physical effects caused by the substance in this case the cement effect of cotton is too mild to permit a reasonable inference that kasir knew that cot contained a controlled substance so the fact that they had been doing this in their early days when they lived in their home country that effect did not necessarily tell him this is a drug they didn't use it in in Somalia or Yemen as a drug they use it as as a as we use coffee it was a social event they they had it at weddings a pirate's case recently and pirates on the Somali the Somali pirates constantly took breaks to chew cot it just confirms what you're saying they over there they all chewed cot they do but they chew it there as we drink coffee now my client explains to the different question is yeah I think in this case the question is it's illegal in the United States and whether this group in the United States as we're importing it and trying to continue to have it news illegal controlled substance in the United States well the circumstantial case with respect to some of the defendants the case of my client your honor the information he could have had your client alish molly your alish molly what information he might have had for mr. Ishaq is about its illegal status or or what mr. Ishaq was doing to conceal all those things could have been conveyed to him a mr. Ishaq it could have showed up in the phone calls that it did not the government could have said to mr. Ishaq did you ever talk to mr. alish molly about about how you concealed it about how the package were mislabeled did he know that did you ever discuss it with him you ever discussed the fact that you knew it was illegal because you heard that in 2005 did you ever ask them that question they never asked the question now they want you want the jury to infer that the key agree that we'd have to review the record and see what's in the rest of the week and with respect each person including mr. polish my thank you very much thank you mr. Cummings I note that mr. Cummings you and mr. Walsh mr. McCarthy are all court appointed and I suppose others in the courtroom are and I want to recognize that service to the court it's a as you know it's a very important service that we value and it was a complex big case and we'll give it a tension that I hope that deserves and and review these things we'll come down and Greek but first adjourn court for the day
judges: Paul V. Niemeyer, Roger L. Gregory, Henry F. Floyd